IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


HEATHER GRUENBAUM,

        Plaintiff,

   vs.                              Civil Action 2:09-CV-1041
                                          Judge Frost
                                          Magistrate Judge King


WERNER ENTERPRISES, INC.,
*et al.,*

        Defendants.


<u>OPINION AND ORDER</u>

This matter is before the Court on *Plaintiff Heather Gruenbaum's Motion to Compel*, Doc. No. 26 ("*Motion to Compel*") and *Defendants' Motion to Strike Deposition Testimony*, Doc. No. 65 ("*Motion to Strike*").  For the reasons that follow, plaintiff's *Motion to Compel* is **GRANTED in part and DENIED in part** and the *Motion to Strike* is **DENIED as moot.**

I.    BACKGROUND

On February 11, 2009, plaintiff's decedent ("decedent") was driving an automobile northbound U.S. Route 42 in Canaan, Madison County, Ohio.  *Complaint*, Doc. No. 2, ¶ 12 ("*Compl.*").  On that same date, defendant Jeremy Harpst was operating a commercial tractor trailer on southbound U.S. Route 42 in Canaan, Madison County, Ohio. *Id.* at ¶ 13.  Plaintiff alleges that defendant Harpst, while in the course and scope of his agency or employment by defendant Werner Enterprises, Inc. ("defendant Werner"), negligently operated his truck "in adverse, dangerous and severe weather conditions," which caused

his truck and decedent's vehicle to collide ("the collision").  *Id*. at ¶ 14.  Plaintiff's decedent died as a result of the collision.  *Id*. at ¶ 17.

On November 17, 2009, plaintiff filed this wrongful death action, alleging that defendants' negligence caused decedent's death.  *Compl*. Plaintiff further alleges, *inter alia*, that defendant Werner negligently permitted and/or instructed defendant Harpst to operate his truck in adverse weather conditions.  *Id*. at ¶ 15.

During the preliminary pretrial conference, the Court ordered that discovery relating to liability be completed by September 15, 2010 and that discovery relating to damages be completed by November 30, 2010.  *Preliminary Pretrial Order*, Doc. No. 11.  After discovery commenced, plaintiff served her initial requests for production of documents.  *Exhibit 1*, attached to *Motion to Compel*.  Defendants responded, objecting to certain requests on the basis of, *inter alia*, the work product doctrine.  *Exhibit 2*, attached to *Motion to Compel*. Although the parties discussed these responses, they were unable to resolve their discovery dispute.  *Exhibits 3* and *4*, attached to *Motion to Compel*.  Thereafter, plaintiff filed her *Motion to Compel*, which defendants oppose.  *Defendants' Opposition to Plaintiff's Motion to Compel*, Doc. No. 35 ("*Defendants' Opp.*").  With the filing of *Plaintiff Heather Gruenbaum's Reply Memorandum in Support of Her Motion to Compel*, Doc. No. 60 ("*Reply*"), the *Motion to Compel* is now ripe for resolution.


II.  **STANDARD FOR MOTION TO COMPEL**

2

Determining the proper scope of discovery falls within the broad discretion of the trial court. *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence. *Id*. These discovery provisions are to be liberally construed. *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964).

Rule 37 authorizes a motion to compel discovery when a party fails to provide proper response to interrogatories under Rule 33 or requests for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-CV-273, 2006 U.S. Dist. LEXIS 68779, *2 (S.D. Ohio Sept. 25, 2006) (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999)).

In addition, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. It appears that plaintiff has met this prerequisite in the case *sub judice*. *Cf*. *Motion to Compel*, p. 2;

*Exhibits 3* and *4*, attached thereto.[1]

**III. ANALYSIS**

The parties' discovery dispute involves four different discovery matters. *Motion to Compel*, p. 5 (representing that these four matters span several document requests, including request numbers 11, 12, 28, 38, 40-43 and 57) (citing *Exhibit 1*, attached thereto). The Court will address each issue in turn.

**A. The Investigative File Relating to the Collision**

Plaintiff seeks an order compelling production of defendant Werner's investigative file relating to the collision. *Motion to Compel*, pp. 7-13. Plaintiff contends that this information is relevant to three issues: (1) defendant Werner's knowledge that adverse weather conditions, such as high winds, can cause fatal crashes such as the collision; (2) defendant Werner's "development of countermeasures that its drivers were expected to follow when encountering" severe winds; and (3) defendant Harpst's failure to follow these countermeasures. *Id*. at 7.

Defendants object to the production of this information, contending that (1) they have already provided all known documentation related to the collision investigation except "a few pages of handwritten notes created by an attorney"; (2) this information is

---

[1]Although plaintiff's counsel failed to attach a formal certification to her *Motion to Compel*, *see* S.D. Ohio Civ. R. 37.2, counsel did provide undisputed evidence, *see supra*, that the parties attempted to, but were unable to, resolve most of the discovery matters extrajudicially. Therefore, with the exception of the deposition of James Mullen, defendants' general counsel, discussed *infra*, the Court will consider the merits of the *Motion to Compel*. To insist that the motion be re-filed with the required certification would exalt mere formality to an unwarranted degree and would waste the time and resources of both the parties and the Court.

protected by the work product doctrine because it was prepared in anticipation of litigation; and (3) plaintiff has not established a substantial need for those portions of the file that have not already been produced. *Defendants' Opp.*, pp. 2, 5-6.  Plaintiff, however, argues that this information is not protected by the work product doctrine because, *inter alia*, defendant Werner prepared the file information as part of its routine business practice.  *Reply*, pp. 3-5.

"[T]he work product doctrine 'is distinct from and broader than the attorney-client privilege.'"  *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986)).  The United States Court of Appeals for the Sixth Circuit has explained the purpose of this doctrine, which

> is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests."
> (Citation omitted)

*Tennessee Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002).

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  However, these "documents and tangible things" may nevertheless be discovered if the party seeking the information establishes that: (1) the documents are otherwise discoverable under Rule 26(b)(1); and (2) the requesting party "shows

that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. "If the court orders discovery of those materials [documents and tangible things], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Therefore, in determining whether or not the work product doctrine may protect certain information, courts distinguish between facts and opinion:

> So-called "fact" work product, the "written or oral information transmitted to the attorney and recorded as conveyed by the client," (citation omitted), may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. (Citation omitted). However, absent waiver, a party may not obtain the "opinion" work product of his adversary; *i.e.*, "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." (Citation omitted)

*Tennessee Laborers Health & Welfare Fund*, 293 F.3d at 294.

"A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared in 'anticipation of litigation.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (internal citations omitted). Once this burden is met, only then does the burden shift to the requesting party to show substantial need and undue hardship. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 382 (6th Cir. 2009) (citing *In re Powerhouse Licensing*, *LLC*, 441 F.3d 467, 473 (6th Cir. 2006)). Therefore, a failure to show that a document was prepared in "anticipation of litigation" ends the court's inquiry and the resisting party must produce the documents. *Id*. (citing *In re*

*Powerhouse Licensing*, *LLC*, 441 F.3d at 473).

In order to determine whether a document constitutes work product, *i.e.*, was prepared in anticipation of, or "because of," litigation, a court must ask two questions: "(1) whether that document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *Roxworthy*, 457 F.3d at 594). Under this test, "[i]t is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege." *Roxworthy*, 457 F.3d at 593. However, "if a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection." *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (citing *Roxworthy*, 457 F.3d at 598-99). *See also Roxworthy*, 457 F.3d at 599 (stating that such documents do not lose their work product privilege "unless the documents 'would have been created in essentially similar form irrespective of the litigation'") (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir. 1998)). The party asserting work product protection therefore bears the burden of showing that "anticipated litigation was the driving force behind the preparation of each requested document." *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (quoting *Roxworthy*, 457 F.3d at 595) (internal quotation marks and citations omitted).

**1. Work product determination, *i.e.*, prepared in**

7

anticipation of litigation

In the case *sub judice*, defendants represent that the only documents from the investigation file in this case ("Investigation File") that have not been produced are a "few pages" of handwritten notes created by an in-house attorney.  *Defendants' Opp.*, p. 2 n.1; *Exhibit 4*, attached to *Motion to Compel*.  As an initial matter, plaintiff contends that she "cannot confirm the veracity of the claim that the rest of the file has been produced" because defendants refuse to produce Werner's General Counsel and person in control of the collision investigation, James Mullen, for deposition.  *Motion to Compel*, p. 6 n.1.  Other than her own unfounded speculation, plaintiff offers nothing to controvert defendants' representation that they have withheld only the attorney notes from the Investigation File.  Under these circumstances, the Court will not presume that defense counsel has deliberately misrepresented the nature of the withheld documents.  Accordingly, this Court will proceed to consider whether these attorney notes are protected from disclosure by the work product doctrine.

As discussed *supra*, absent waiver, Rule 26 protects against disclosure of "opinion" work product, although "fact" work product may be obtained upon a showing of substantial need.  Fed. R. Civ. P. 26(b)(3)(B); *Tennessee Laborers Health & Welfare Fund*, 293 F.3d at 294.  Although the attorney notes at issue in this case have not been submitted to the Court for *in camera* inspection, defendants do not argue that these notes contain attorney "opinion" work product.  Similarly, plaintiff does not contend that defendants waived their right to "opinion" work product contained within the Investigation

File. Based on this record, the Court will assume that the attorney notes in dispute contain facts that may or may not be protected by the work product doctrine.[2]

"[A] party may satisfy its burden of showing anticipation of litigation in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories[.]" *Biegas*, 573 F.3d at 381 (quoting *Roxworthy*, 457 F.3d at 597) (internal quotation marks omitted). A specific and detailed affidavit establishing that a document was prepared in anticipation of litigation is sufficient to meet this burden. *Id*. "However, application of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statement[s]." *Roxworthy*, 457 F.3d at 597 (quoting *Guardsmark, Inc. v. Blue Cross & Blue Shield of Tenn.*, 206 F.R.D. 202, 209, 210 (W.D. Tenn. 2002)).

In support of their argument that the notes withheld from plaintiff constitute work product, defendants submitted for *in camera* inspection (1) a declaration of Werner's General Counsel, James Mullen, and (2) a memorandum prepared by Mr. Mullen containing Werner's "Catastrophic Loss Team" ("CAT Loss") protocol that is implemented when a serious accident occurs. *Defendants' Motion for Leave to Submit Documents in Camera*, Doc. No. 31; *Order*, Doc. No. 33. After reviewing these documents, along with the parties' arguments and supporting exhibits, the Court finds that Werner had a subjective fear

---

[2]Any opinions of counsel contained within these notes would in any event be protected by the work product doctrine because there has been no evidence of waiver.

of litigation because of, *inter alia*, the serious nature of this particular collision, including decedent's death and in-house counsel's invocation of the extraordinary CAT Loss protocol.  In addition, the Court finds that, under these circumstances, it was objectively reasonable to anticipate litigation.  *Cf. Lagace v. New England Cent. R.R.*, No. 3:06CV1317, 2007 U.S. Dist. LEXIS 72540, at *10-11 (D. Conn. Sept. 28, 2007) (finding that an investigative report was prepared, at the direction of in-house counsel, in anticipation of litigation where "[t]he plaintiff was seriously injured, counsel was retained immediately, and counsel immediately retained RRMI [a risk management corporation] for investigative purposes.  The defendant's in-house counsel affirms that RRMI is hired only when there is a strong likelihood that litigation will occur").

Plaintiff argues that the Investigation File, *i.e.*, the attorney notes, does not qualify as work product because it was prepared in the regular course of business.  *Motion to Compel*, pp. 7-13 (citing, *inter alia*, *Deposition of Della Sanders*, attached thereto as Exhibit 7) ("*Sanders Deposition*")[3]; *Reply*, pp. 3-7.  Plaintiff specifically contends that the testimony of Ms. Sanders, Werner's Safety Director, establishes that Werner prepared its investigation reports in "substantially the same manner" when dealing with routine or catastrophic incidents, contrary to Werner's assertions that serious accidents like the instant collision are uniquely handled through the CAT Loss protocol.  Additionally, plaintiff contends, *inter alia*, that

---

[3]For purposes of clarification, reference *infra* to "*Sanders Deposition*" refers only to the deposition excerpt attached to the *Motion to Compel*, not to the excerpt attached to the *Motion to Strike*.

Werner was required by federal law to compile this information, precluding application of the work product doctrine. *Motion to Compel*, p. 12 (citing 49 C.F.R. § 390.15).

After reviewing the testimony of Ms. Sanders, who is not a member of Werner's legal department, and the information submitted *in camera*, the Court is not persuaded that the withheld attorney notes were prepared in the regular course of business. Although the information contained in these notes may serve other business purposes, *i.e.*, determining whether or not a collision is preventable, the "driving force" behind the creation of the information was the anticipation of litigation. *See In re Professionals Direct Ins. Co.*, 578 F.3d at 439; *Roxworthy*, 457 F.3d at 595. The fact that the information, created because of litigation, may also serve other purposes does not deprive that information of its character as work product. *Id*.

Similarly, the Court is not persuaded that Title 49 of the Code of Federal Regulations, Section 390.15, changes the Court's conclusion that the attorney notes constitute work product. Section 390.15 requires motor carriers[4] to "make all records and information pertaining to an accident available to an authorized representative or special agent of the Federal Motor Carrier Safety Administration." 49

---

[4]There is no dispute that Werner is a "motor carrier" within the meaning of this section:

> Motor carrier means a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories.

49 C.F.R. § 390.5.

C.F.R. § 390.15(a).[5]  This section also requires, in pertinent part, the following:

> For accidents that occur after April 29, 2003, motor carriers must maintain an accident register for three years after the date of each accident. . . . Information placed in the accident register must contain at least the following:
>
> (1) A list of accidents as defined at § 390.5 of this chapter containing for each accident:
>
> (i) Date of accident.
>
> (ii) City or town, or most near, where the accident occurred and the State where the accident occurred.
>
> (iii) Driver Name.
>
> (iv) Number of injuries.
>
> (v) Number of fatalities.
>
> (vi) Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released.
>
> (2) Copies of all accident reports required by State or other governmental entities or insurers.

49 C.F.R. § 390.15(b).  As discussed *supra*, the only documents in the Investigation File that were withheld from production are attorney notes.  The Court is not persuaded that notes of an attorney prepared in anticipation of litigation constitute "an accident register" within the meaning of Section 390.15.  Accordingly, compliance with this section does not remove the withheld attorney notes from work product protection.

---

[5]This section was revised on December 17, 2008, effective on June 17, 2009.  49 C.F.R. § 390.15.  However, because these revisions were promulgated after the events giving rise to this litigation, *i.e.*, after February 11, 2009, the Court will apply the prior version of Section 390.15.  *Cf. Next Generation Wireless, Ltd. v. United States*, No. 06-cv-838, 2008 U.S. Dist. LEXIS 82863, at *8 n.1 (S.D. Ohio Aug. 28, 2008) (applying former version of regulation section that was in effect at time action accrued).  Accordingly, the quoted language above reflects the version of Section 390.15 that was in effect until June 17, 2009.

2.    **Substantial need**

Having concluded that the attorney notes in the Investigation File are protected by the work product doctrine, the burden now shifts to plaintiff to show substantial need and undue hardship. Fed. R. Civ. P. 26(a)(3)(B); *Biegas*, 573 F.3d at 382.  After reviewing the *Motion to Compel* and *Reply*, the Court cannot find any articulation by plaintiff explaining her substantial need for these attorney notes. Instead, plaintiff's arguments focus on her contention that the notes do not qualify as work product, a contention that this Court rejects. The Court therefore concludes that plaintiff has failed to meet her burden.  Accordingly, as to the attorney notes contained in the Investigation File, the *Motion to Compel* is **DENIED**.

B.    **Documents Related to Four Other Crashes**

Plaintiff seeks an order compelling production of Werner's investigation files regarding four prior accidents ("Risk Department Files"): (1) February 6, 2009, in Wyoming; (2) February 6, 2009, in Kansas; (3) February 9, 2009, in Wyoming; and (4) February 11, 2009, in Indiana.  According to plaintiff, the collision giving rise to this action occurred on February 11, 2009, near Plain City, Ohio while defendant Harpst hauled an unloaded Werner tractor trailer, which was blown over during a strong windstorm.  *Motion to Compel*, pp. 3-4. Plaintiff argues that Risk Department Files are relevant[6] because those crashes occurred days before the subject collision and involved the same instrumentality (wind).  *Id.* at 7-8.  More specifically,

---

[6]Plaintiff further contends that, notwithstanding defendants' initial objections to the relevant document requests, defendants' work-product argument relates only to the documents contained in the Investigation File relating to this collision.  *Reply*, p. 2 n.1.  This Court agrees.  *See Defendants' Opposition*, pp. 4, 6-10, and Doc. No. 31. The Court will therefore not address whether or not the work product privilege precludes production of the Risk Department Files.

13

plaintiff contends that this information is relevant to (1) defendant Werner's knowledge that adverse weather conditions, such as high winds, can cause fatal crashes such as the collision; (2) defendant Werner's "development of countermeasures that its drivers were expected to follow when encountering" severe winds; and (3) defendant Harpst's failure to follow these countermeasures. *Id.* at 7. Plaintiff argues that Rule 26 authorizes production of the Risk Department Files and other courts "have compelled nationwide discovery of other incidents, including truck crashes." *Reply*, pp. 2-3. Defendants disagree, contending that these four crashes involve vastly different facts that are unrelated to any of the issues in this case. *Defendants' Opposition*, pp. 6-10.

"It is well established that evidence of prior similar incidents is relevant for the purpose of showing knowledge so long as the conditions in effect during the past are sufficiently similar to those at the time of the incident in question." *Koloda v. Gen'l Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 376 (6th Cir. 1983). "Similarly, this court [the United States Court of Appeals for the Sixth Circuit] has held that evidence of prior similar incidents is relevant to show notice of a possibly dangerous condition so long as the circumstances involved are similar." *Id.* (finding that "evidence of a lack of prior claims or similar incidents is relevant in this case as to the issue of [defendant] GM's actual or constructive knowledge"). *See also Carpenter v. Norfolk & W. Ry.*, No. 96-3871, 1998 U.S. App. LEXIS 7694, at *13 (6th Cir. April 16, 1998) (stating that it is "well settled" that evidence "of other accidents in the same place is admissible not only to show the dangerous character of the place, but also that knowledge thereof was brought to the

14

attention of those responsible therefor.") (quoting *Stoler v. Penn Cent. Transp. Co.*, 583 F.2d 896, 899 (6th Cir. 1978)) (internal quotation marks omitted).

With this standard in mind, the Court turns to the four prior accidents, all of which involved drivers other than defendant Harpst.

### 1.    Accident in Wyoming on February 6, 2009

This accident occurred on I-25, a two-way divided highway, in Platte County, Wyoming.  *Exhibit B*, pp. 1, 3, 6, attached to *Defendant's Opposition*.  This was a single-vehicle accident, involving a "strong wind gust" and damage only to the Werner vehicle:

> Vehicle was northbound on I-25.  A strong wind gust picked up the trailer.  In an effort to remain upright the driver steered into the trailer.  This action caused the vehicle to drive off the right side of the roadway and down an extremely steep shoulder.  The vehicle then struck the upgrade for the road surface of the acceleration ramp.  The driver then turned and brought the vehicle to a stop avoiding striking the right of way fence.  Vehicle experienced apperant [sic] damage to cowling only.

*Id.* at 3.  The accident occurred during the day on dry road conditions while the driver was hauling general freight.  *Id.* at 2, 7.  The accident report cited "Weather Conditions" as an "Environmental Circumstance" to the incident.  *Id.*  The Werner driver was not injured in this accident.  *Id.* at 8.

In the case *sub judice*, the collision involved two vehicles during a windstorm, which resulted in a fatality.  Plaintiff alleges that "the winds blew his [defendant Harpst's] Werner truck and trailer over and onto the top of Plaintiff's decedent's Silverado. . . causing Plaintiff's decedent to suffer massive head trauma."  *Motion to Compel*, p. 4.  Plaintiff also emphasizes that defendant Harpst was driving an unloaded trailer at the time of the incident, which was

allegedly hazardous under windy conditions. *Motion to Compel*, pp. 3-4. In contrast, the accident in Wyoming on February 6, 2009, involved only one vehicle and the trailer was loaded at the time of the incident. Although the accident report stated that a "strong gust picked up the trailer," it was the driver's steer[ing] into the trailer. . . [that] caused the vehicle to drive off the right side of the roadway[.]" Based on the present record, there are just too many differences between the two accidents for the Court to conclude that discovery related to the Wyoming accident is warranted. Accordingly, as it relates to the accident in Wyoming on February 6, 2009, the *Motion to Compel* is **DENIED**.

### 2. Accident in Kansas on February 6, 2009

This accident occurred on I-70, in Kansas City, Kansas, which occurred during daylight on dry road conditions. *Exhibit B*, pp. 9-10. At the time of the accident, the driver was hauling general freight. *Id*. at 13. This was a single-vehicle accident, involving "[s]trong winds" and only the Werner vehicle:

PHYSICAL EVIDENCE AND DRIVER STATEMENTS INDICATE:

1.   Vehicle 1 [Werner vehicle] was eastbound I-70 on the curve merging with Minnesota Ave. traveling approximately 40 mph.

2.   Vehicle 1 overturned and skidded to a stop on its left side in the left and left center lanes.

WEATHER AND ROADWAY CONDITIONS:

1.   The roadway in the area of the crash is curved and on a level grade.

2.   At the time of the crash the roadway was dry with no precipitation, but strong wind was out of the south, which was affecting driving conditions.

VEHICLE DAMAGE:

16

1.    Vehicle 1 sustained heavy damage including, but not limited to, the entire left side, windshield, and top.

OFFICER OPINION:

1.    Driver 1 was traveling too fast to maneuver the curve with a strong wind out of the south possibly assisting in the truck's overturning.

ADDITIONAL INFORMATION:

1.    Driver 1 indicated he seen [sic] the tandem wheels on his trailer off the ground while he was in the curve. Driver 1 turned the steering wheel to try and correct the problem, but the trailer continued to tip.

2.    Trailer Information; Tennesee [sic] registration plate T148671, VIN 1GRAA0620LB004302, Owned by Werner Enterprises. Trailer was loaded with bagged dog food.

*Id.* at 10, 11.  Following the accident, emergency medical services transported the Werner driver to a medical facility.  *Id.* at 9.

Unlike the accident in the case *sub judice*, the driver in the single-vehicle Kansas accident was negotiating a turn when the trailer overturned.  The driver was hauling freight.  Significantly, the reporting officer did not definitively conclude that the wind assisted in overturning the truck.  These differences preclude a finding that the accidents are "sufficiently similar" to justify further discovery in the Kansas accident.  Accordingly, as to the accident in Kansas on February 6, 2009, the *Motion to Compel* is **DENIED**.

### 3.    Accident in Wyoming on February 9, 2009

This accident occurred on I-80, a divided highway, in Carbon County, Wyoming.  *Exhibit B*, p. 15.  This was a single-vehicle accident, which occurred on icy road conditions while the driver was hauling freight.  *Id.* at 16, 21.  At the time of the accident, it was daylight and snow was blowing.  *Id.* at 16.  According to the accident report,

Driver stated he was traveling between 5-10 mph when he

17

> applied the brakes of his combination unit.  The driver then
> stated that he lost control of the combination as it
> jackknifed, blocking the entire westbound roadway.

*Id*. at 17.  The Werner driver was uninjured in this accident.  *Id*. at
22.

Unlike the collision in this case, this Wyoming accident involved
only one vehicle and occurred while the vehicle was hauling a loaded
trailer.  The accident, which occurred on the other side of the
country, involved a jacknife, not a blown-over trailer, and did not
result in personal injury.  The road conditions, snowy and icy, also
distinguish this accident.  Based on the present record, the Court
cannot conclude that discovery of this accident is warranted.
Accordingly, as it relates to the accident in Wyoming on February 9,
2009, the *Motion to Compel* is **DENIED**.

### 4.    Accident in Indiana on February 11, 2009

This accident occurred on I-69 in Huntington County, Indiana.
*Exhibit B*, pp. 23-24.  This single-vehicle accident occurred in the
dark under wet road conditions during a severe cross wind.  *Id*. at 23.
According to the accident report,

> V1 [Werner vehicle] was southbound on I-69 south of the 73
> mm when a severe crosswind blew the truck and trailer over.
> V1 came to a rest in the median.  D1 had to exit V1 through
> the windshield.  The cargo box was empty at the time of the
> crash.

*Id*. at 24.  The Werner driver's knee and lower leg or foot were
injured in this accident.  *Id*. at 25.

Both the Indiana accident and the collision in this case involved
severe winds that blew over an empty trailer.  Although the Indiana
accident did not involve a fatality, the Werner driver was injured.
The Indiana accident also occurred on the same day and within the same
region of the country as the collision in this case.  Under these

18

circumstances, the Court concludes that these accidents are similar enough to warrant further discovery.  Accordingly, as it relates to Risk Department File related to the accident on February 11, 2009, in Indiana ("the Indiana crash"), the *Motion to Compel* is **GRANTED**.

    **C.**    **Deposition of Defendant Werner's In-House Counsel**

    Plaintiff seeks an order compelling the deposition of Werner's in-house counsel, James Mullen.  Plaintiff argues that his testimony is crucial because (1) he is the only one who determines whether serious accidents, like the collision in this case, was preventable, and (2) he is the most knowledgeable about post-crash investigations because he oversees the investigation of all accidents.  *Motion to Compel*, p. 13 (citing *Sanders Deposition*); *Reply*, pp. 7-8 (same).  Defendants argue that the *Motion to Compel* should be denied with respect to this issue because (1) the issue is not ripe as plaintiff failed to notice Mr. Mullen's deposition, and (2) the proposed deposition testimony would be protected by the attorney-client privilege and work product doctrine.  *Defendants' Opposition*, pp. 10-14.  Defendants also move to strike the deposition testimony of Ms. Sanders upon which plaintiff relies, which defendants contend was given under objection and was "grossly mischaracterize[d]" by plaintiff.  *Motion to Strike* (arguing why the Court should not compel the deposition of Mr. Mullen).

    As an initial matter, for purposes of the current motions and in the interests of judicial economy, the Court will consider the merits of the arguments notwithstanding the fact that plaintiff never served a notice or subpoena for Mr. Mullen's deposition.  In addition, because the parties disagree whether Mr. Mullen may testify as to serious accidents, including this one, and other non-serious

19

accidents, the Court will address each category in turn.

### 1.  Testimony regarding the instant collision

Plaintiff argues that she has the right to depose Mr. Mullen because Ms. Sanders is not aware of anyone other than Mr. Mullen who has knowledge regarding the outcome of Werner's investigation of this crash. *Reply*, p. 7 (citing *Sanders Deposition*, pp. 321-22). However, defendants have represented to the Court that it "has not made a determination with respect to preventability/non-preventability (or chargeability/non-chargeability) with respect to the subject accident." *Defendants' Opposition*, p. 5. Plaintiff has provided no reason for the Court to believe that defense counsel deliberately misrepresented to the Court the status of Werner's determination. Mr. Mullen cannot testify about a determination that has not been made. Accordingly, plaintiff's request to depose Mr. Mullen as to the preventability of this accident is without merit.

However, even if such a preventability determination had been made, information regarding this CAT Loss investigation would be privileged for the reasons discussed *supra*. Although in-house counsel, such as Mr. Mullen, are not immune from depositions, "[d]iscovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Plaintiff argues that *Shelton* does not preclude Mr. Mullen's deposition because, *inter alia*, this information is crucial to her case.

This Court concludes that plaintiff has failed to overcome the protection afforded to Mr. Mullen's testimony and to satisfy all of the prongs under *Shelton*. First, plaintiff offers no persuasive argument or evidence that this testimony would not be privileged. Indeed, the Court is not persuaded that this information is not privileged for the reasons, including the documents submitted *in camera*, discussed *supra* relating to the production of the Investigation File for the instant collision.

Second, plaintiff has not established that this testimony is crucial to her case. As defendants point out, plaintiff previously deposed Ms. Sanders, Werner's Director of Safety, and defendant Harpst, Werner's driver at the time of the collision. In addition, plaintiff does not dispute that "[t]he lead investigator of the [instant] accident and another Trooper with Ohio State Highway Patrol have also been deposed." *Defendants' Opposition*, p. 14. These individuals testified regarding, *inter alia*, weather conditions, including the windy conditions, and Werner's training policies. *Id*. Accordingly, the Court is not persuaded that Mr. Mullen's testimony is crucial.

Finally, courts have denied requests to depose counsel under circumstances such as those presented to this Court, *i.e.,* where counsel was involved prior to litigation, helped develop litigation strategy and where other important third parties have been deposed. *See*, *e.g.*, *Massillon Management, LLC v. Americold Realty Trust*, No. 5:08CV0799, 2009 WL 614831, at *6 (N.D. Ohio Jan. 21, 2009) (reversing magistrate judge's order permitting deposition of in-house counsel where, *inter alia*, counsel was "intimately involved in this dispute since well before it blossomed into a lawsuit, and has played an

integral role in developing Defendant's litigation strategy");
*Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.*,
2007 WL 543929 (S.D. Ohio Feb. 16, 2007) (denying request to depose
counsel where *Shelton* test had not been met and, *inter alia*, the
requesting party "has already deposed the important third parties at
issue").  Here, plaintiff has likewise failed to meet the requirements
under *Shelton* as to Mr. Mullen's testimony regarding this collision.

> **2.   Testimony regarding other serious accidents**

Plaintiff contends that she is entitled to depose Mr. Mullen
because it is he who determines whether serious accidents were
preventable.  *Reply*, pp. 7-8 (citing *Sanders Deposition*).

This Court disagrees.  First, defendants implement a CAT Loss
protocol when a serious accident occurs.  In light of the discussion
*supra*, plaintiff has failed to persuade the Court that this
information is not privileged.

In addition, the Court is likewise unpersuaded that information
regarding the preventability of serious accidents is exclusively
within Mr. Mullen's knowledge.  Ms. Sanders testified that "the risk
department" reviews a variety of factors when determining
preventability:

> Q:   Okay.  Now, do you play- you yourself play any role at
>      all in post accident investigations, whether they are
>      serious accidents or less serious accidents?
>
> A:   Not in the investigations, no.
>
> Q:   All right.  And with regard to these investigations of
>      these accidents, and let's talk about the serious ones
>      first that are investigated at the direction of in-
>      house counsel.  Who is it that determines whether or
>      not the particular accident that's being investigated
>      was or was not a preventable accident?
>
>      MR. PITCHFORD:  Objection.

22

THE WITNESS: I believe it's ultimately general
counsel.

\*                    \*                    \*                    \*

Q:     Just so we are clear on the record, by accidents,
       there's no distinction with regard to serious
       accidents or the lesser serious accidents that are
       simply investigated by risk management.  One of the
       reasons all of those accidents are investigated is
       because Werner Enterprises wants to determine if
       additional- if anything can be done in the future to
       prevent similar accidents from occurring in the
       future?

       MR. PITCHFORD:  Objection.

       THE WITNESS: That would be one of the reasons we
       determine preventability, yes.

       BY MR. DORAN:

Q:     Right.  Can you tell me this: When determining
       preventability, what areas does Werner look at to make
       the determination?

A:     The risk department, again, under the oversight of
       legal counsel, would review a variety of factors.  In
       general, police reports, witness statements, they may
       talk with the driver or other driver of the vehicles.
       Those would be the key steps, I guess, or primary
       steps, that I can think of.

*Sanders Deposition*, pp. 287, 292-93.

Although Ms. Sanders, who is not a member of the legal
department, "believed" that general counsel "ultimately" determined
whether or not a serious accident was preventable, she also stated
that "the risk department" reviewed factors to determine
preventability.  Accordingly, it appears that members of the risk
department would have knowledge about whether or not a serious
accident was preventable.  Based on this testimony, the Court is not
persuaded that Mr. Mullen is the "only witness" available to testify
about the preventability of serious accidents.  Accordingly, plaintiff

cannot satisfy the *Shelton* test as to Mr. Mullen's testimony on this subject.

**3. Testimony regarding non-serious accidents**

Plaintiff also contends that she is entitled to depose Mr. Mullen because he oversees all accidents, including non-serious accidents. *Reply*, pp. 7-8.

This Court again disagrees.  For the same reasons discussed *supra*, the testimony of Ms. Sanders does not establish that it is Mr. Mullen who is exclusively or even predominately in possession of information related to the non-fatal accident that occurred in Indiana on February 11, 2009.  Accordingly, as to plaintiff's request to depose Mr. Mullen, the *Motion to Compel* is **DENIED**.  In addition, because the Court has resolved plaintiff's request to depose Mr. Mullen based on the filings related to the *Motion to Compel* and without resorting to the arguments and evidence contained in the *Motion to Strike*, that latter motion is **DENIED as moot.**

**D. Depositions of Defendant Werner's Employees**

Finally, plaintiff seeks to compel the depositions of other Werner employees who investigated the instant collision and the Indiana crash.  For the reasons discussed *supra*, plaintiff is not entitled to depose Werner employees, presumably CAT Loss members, who investigated the instant collision.

However, this Court has already determined that the Indiana crash is relevant to the issues in this litigation.  Because the Indiana accident did not involve a fatality, it does not appear that a CAT Loss team was dispatched to that accident.  *Defendants' Opposition*, p. 4 n.4.  If no CAT Loss team was dispatched, the Court is not persuaded that information related to the Indiana accident is privileged.  Non-

24

privileged matter that is relevant is discoverable.  Fed. R. Civ. P. 26(b).  Accordingly, this Court concludes that plaintiff may depose the Werner employee or employees who participated in investigation involving the Indiana accident.

**WHEREUPON**, *Plaintiff Heather Gruenbaum's Motion to Compel*, Doc. No. 26, is **GRANTED in part and DENIED in part** consistent with the foregoing and *Defendants' Motion to Strike Deposition Testimony*, Doc. No. 65, is **DENIED as moot**.  Defendants are **ORDERED** to produce the Risk Department File related to the accident in Indiana on February 11, 2009, within five (5) days of the date of this *Opinion and Order*.

Defendants are further **ORDERED** to produce for deposition the Werner employee or employees who were involved in investigating the accident that occurred in Indiana on February 11, 2009.  In ordering the deposition/s, the Court **ADVISES** the parties that the completion of any deposition must not affect any of the briefing deadlines related to the motions for summary judgment.  *Order*, Doc. No. 62.


October 7, 2010                    ___s/Norah McCann King___
                                   Norah M<sup>c</sup>Cann King
                            United States Magistrate Judge