UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HEATHER GRUENBAUM,

      Plaintiff,

      v.

WERNER ENTERPRISES, INC., et al.,

      Defendants.

Case No. 09-cv-1041
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on three motions:

1. Defendants' Motion to Strike and/or Exclude *in Limine* Opinions of Plaintiff's Expert Gary Derian ("Motion *in Limine* Regarding Expert Derian") (ECF No. 81), Plaintiff Heather Gruenbaum's Memorandum in Opposition to Defendants' Motion *in Limine* Regarding Expert Derian (ECF No. 121), and the Reply in Support of Defendants' Motion *in Limine* Regarding Expert Derian (ECF No. 129); and

2. Defendants' Motion to Strike and/or Exclude *in Limine* the Inadmissible Testimony of Stephen M. Wistar ("Motion *in Limine* Regarding Expert Wistar") (ECF No. 82), Plaintiff Heather Gruenbaum's Memorandum in Opposition to Defendants' Motion *in Limine* Regarding Expert Wistar (ECF No. 125), and the Reply Brief in Support of Defendants' Motion *in Limine* Regarding Expert Wistar (ECF No. 134); and

3. Defendants' Motion to Strike and/or Exclude *in Limine* Testimony of Michael Napier, Sr. ("Motion *in Limine* Regarding Expert Napier") (ECF No. 83), Plaintiff Heather Gruenbaum's Memorandum in Opposition to Defendants' Motion *in Limine* Regarding Expert Napier (ECF No. 122), and the Reply Brief in Support of Defendants' Motion *in Limine* Regarding Expert

1

Napier (ECF No. 132).

## I. Background

On February 11, 2009, Plaintiff's husband was driving a 2008 Chevrolet Silverado truck northbound on U.S. Route 42 in Canaan, Madison County, Ohio. On that same date, Defendant Jeremy Harpst was operating a commercial semi tractor-trailer traveling southbound that same roadway. Plaintiff alleges that Defendant Harpst, while in the course and scope of his employment with Defendant Werner Enterprises, Inc. ("Werner"), negligently operated his truck "in adverse, dangerous and severe weather conditions," which caused his tractor-trailer to be blown over onto Plaintiff's husband's vehicle. Plaintiff's husband ("Plaintiff's decedent") died as a result of the collision.

On November 17, 2009, Plaintiff filed this wrongful death action, alleging that Defendants' negligence caused Plaintiff's decedent's death. Plaintiff further alleges, *inter alia*, that Defendant Werner negligently permitted Defendant Harpst to operate his semi truck in adverse weather conditions.

## II. Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion *in limine* is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio

2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Courts, however, are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1975).  To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds.  *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *cf. Luce*, 469 U.S. at 41.

### III.  Discussion

In all three of Defendants' motions they request exclusion of certain expert opinions or portions of expert opinions pursuant to  Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert*, 509 U.S. at 597.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other

specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, a court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert*, 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular

factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Guided by the foregoing concerns, the Court will consider each of Defendants' motions.

**A. Defendants' Motion *in Limine* Regarding Expert Derian**

Defendants request exclusion of Expert Derian's opinion because he lacks expertise in the field of accident reconstruction and because his opinion regarding the wind speeds at which tractor-trailers blow-over is unreliable, *i.e.*, he relies upon unscientific and invalid reports, he relies upon the wrong tables in the reports, and he does not account for all possibly significant

factors, such as wet roads.  Defendants' arguments are not well taken.

First, the evidence shows that Expert Derian is a registered professional engineer with a degree in mechanical engineering and with many years of training in accident reconstruction. Derian has been a mechanical engineer for over 30 years and has acted as a forensic consultant for well over 10 years.  As a forensic consultant, Derian has opined on over 500 cases with approximately 100 of those cases as an accident reconstructionist.

Second, Defendants complain that Derian "turns a blind eye" from the more specific data contained in one of the reports upon which he relies and focuses on the more general data in the report.  In other words, Expert Derian wrongly interprets the information contained in the report. This argument, however, goes to the weight of the evidence, not its admissibility.  *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-31 (concluding that the question of whether the expert's opinion was accurate in light of his use of certain data went to the weight of the evidence, not its admissibility); *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 566 (6th Cir. 1985) (noting that weaknesses in the expert's qualifications and technical errors in the testimony went only to the weight of the evidence or the credibility of the witness, and not admissibility); *cf. Daubert*, 509 U.S. at 596  ("Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Third, Expert Derian's opinion need not account for all possible factors to be admissible and useful to the factfinder.  *See, e.g., Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 F. App'x 914, 920 (6th Cir. 2004) ("The inability to eliminate other causes of the fire or state with certainty the source of the accelerant go the reliability of his conclusions, not to the admissibility

of his opinion."); *Nemir v. Mitsubishi Motor Sales of Am.*, Inc., 6 F. App'x 266, 275 (6th Cir. 2001) ("While other possibilities exist with regards to causation, the 'fact that several possible causes might remain "uneliminated" . . . only goes to the accuracy of the conclusion, not the soundness of the methodology. In evaluating an expert witness, '*Daubert* and Rule 702 require only that the expert testimony be derived from inferences based on a scientific method and that those inferences be derived from the facts on the case at hand . . . not that they know the answers to all the questions a case presents-even to the most fundamental questions.' The district court, by requiring 'specific knowledge of the precise physiological cause' of the accident 'held the expert[] up to entirely too strict a standard when considering the admissibility of their testimony.' ") (reversing summary judgment) (omissions in original) (internal citations omitted).

      Last, the Court concludes that Expert Derian based his opinions on reliable information. It is important to note that Derian is a rebuttal expert offered to point out what Plaintiffs contend are the "fallacies" in Defendants' accident reconstruction expert's opinions. Defendants' expert opined that it takes wind speeds of 70 miles per hour or more to topple an empty tractor-trailer. As Defendants themselves admit, Derian "restates" the opinions of their expert and evaluates them. Certainly, Defendants are not objecting to the reliability of the information upon which their expert relies.

      As to his own analysis of that information, Derian testified that he performed a forensic analysis, much like the analysis that Defendants' expert performed, but added an additional calculation to account for the effect of tire friction when Harpst's trailer started to slide before it tipped over, to reach his opinion that the wind gust that blew-over Defendants' tractor-trailer could have been as low as 40 miles per hour. The two reports about which Defendants complain,

(*i.e.*, *Evaluation of Intelligent Transportation System Alternatives for Reducing the Risks of Truck Rollover Crashes Due to High Winds*, R&S Consulting and *Predicting and Mitigating Wind Induced Truck Crashes in Kansas*, University of Kansas), were used as additional support for his opinions. Defendants complain, again, goes more to the weight to be given to Derian's opinion, not to the admissibility that opinion. It will be up to a jury to determine the credence assigned to Expert Derian's opinions. *See Morales v. American Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998) (affirming district court's admission of expert testimony: "Therefore, the jury was free to give [the expert's] testimony as much credence as it felt the testimony deserved, particularly in light of Defendants' cross-examination . . . .").

Accordingly, the Court **DENIES** Defendants' Motion *in Limine* Regarding Expert Derian

**B.  Defendants' Motion *in Limine* Regarding Expert Wistar**

Defendants move to exclude the portion of Plaintiff's meteorological expert's opinion related to three specific wind speed calculations for three separate "legs along Jeremy Harpst's route as he traveled from North Baltimore to Plain City, Ohio on the night in question." (ECF No. 134 at 1.) Defendants argue that Expert Wistar's opinions should be excluded because his "qualifications are not in the record" and because his opinions are based upon unreliable data and because they lack methodology. Defendants' arguments are not well taken.

Expert Wistar is well qualified to offer expert opinions as to weather conditions and his qualifications are documented in the record. Wistar's *curriculum vitae* was attached to his initial report and was reviewed during his deposition, all of which are part of the record. Wistar earned his bachelor's degree in Meteorology from Pennsylvania State University in 1974 and has been actively practicing meteorology since then. Wistar is a member of the American Meteorological

8

Society, the National Weather Association, and the National Council of Industrial Meteorologists. Wistar has been designated as a Certified Consulting Meteorologist by the American Meteorological Society, has been admitted as an expert witness in numerous trials across the country, and has authored over one thousand reports documenting weather conditions for certain locations and times.

As to Expert Wistar's opinions, Defendants contend that certain MesoWest weather data and Doppler radar readings relied upon by Wistar are unreliable and that Wistar failed to offer any methodology for his opinions regarding the weather north of Plain City, Ohio on February 11, 2009. However, on deposition Wistar explained the methodology he employed in rendering his opinions. Specifically, Wistar identified the numerous sources of information he relied upon and explained that he looked first at broad, wide-ranging information to get a "big picture" or overview, and then looked at various sources of specific local-area weather data to fill in the details. (Wistar Dep. at. 96, 153, Aug. 27, 2010.) Wistar explained that he did not rely on any one piece of information, but made sure all of the information fit together. *Id.*

Indeed, far from relying solely on MesoWest data, as Defendants suggest, Expert Wistar relied upon at least eight separate data sources, including weather data collected from nine different airports in Ohio. Specifically, Wistar relied upon: daily weather maps, local climatological data, recordings from cooperative observation sites, hourly weather observations, MesoWest sites, National Weather Service forecasts, maps of the relevant geographic area, and Mosaic radar reports. (Wistar Dep. at 79, 90-106, 111-121, 125-129, Ex. B., Aug. 27, 2010.)

The Court finds that Expert Wistar's testimony is based upon "sufficient facts or data," is the "product of reliable principles and methods," and that he "has applied the principles and

9

methods reliably to the facts of the case." Fed. R. Evid. 702. Consequently, the Court **DENIES** Defendants' Motion *in Limine* Regarding Expert Wistar.

**C. Defendants' Motion *in Limine* Regarding Expert Napier**

Defendants request exclusion of Expert Napier's opinions because they are not helpful to the trier of fact, they are not based upon reliable data, and they are "likely to mislead the jury," confuse the issues, and unfairly prejudice Defendants. Initially, the Court notes that at this juncture, there is obviously no need to consider the effect of Expert Napier's testimony on the jury. As to Defendants' other arguments, they are not well taken.

Expert Napier is Plaintiff's trucking industry expert. He has held a commercial driver's licence since 1992, has accumulated well over 250,000 miles of tractor-trailer driving experience and has trained thousands of commercial vehicle drivers as well as supervisors of such drivers. Napier has successfully owned and operated two trucking companies and one transportation property brokerage company. Additionally, Napier has served for five years as the Senior Vice President of Risk Management, Safety & Compliance and Corporate Administration for a sizeable motor carrier and transportation property brokerage company. Napier is a member of the Georgia Motor Trucking Association and its Safety Council and the North American Transportation Management Institute. He has completed the nationally accredited academic requirements necessary to obtain certification as a "Certified Safety Director," for motor fleet safety supervision. Napier has also consulted and/or testified in numerous trucking matters for the past 13 years.

Experts of Napier's type may opine as to the customs in an industry in order to assist the factfinder in determining whether a defendant has breached a tort duty. *McGowan v. Cooper*

*Indus.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (reversed a jury verdict because the trial court erroneously excluded expert testimony about industry custom in the air-compressor industry because the expert's testimony "was helpful and should have been admitted under Rule 702 as specialized knowledge"); *Maranatha Volunteers Int'l, Inc. v. Golden Giant, Inc.*, No. 98-3076, 1999 U.S. App. LEXIS 10654, at *22 (6th Cir. May 19, 1999) ("standard practices and industry customs are generally relevant to the duty of care"); *Walker v. Jax Mold & Mach.*, Nos. 94-5960, 94-5961, 1995 U.S. App. LEXIS 37024, at *5 (6th Cir. Dec. 6, 1995) ("Due to their extensive practical experience in the relevant industry, the district court did not err in finding that [the experts] were qualified to provide information on industry standards, nor did the court abuse its discretion in determining that their expert opinions would assist the jury."); *In re Commercial Money Ctr.*, Inc., MDL No. 1490, 83 Fed. R. Evid. Serv. (Callaghan) 232, at *115, 2010 U.S. Dist. LEXIS 90804 (N.D. Ohio July 27, 2010) (rejecting *Daubert* challenge).

Further, expert opinion may be based entirely on experience.  As the Sixth Circuit has explained, if the *Daubert* "framework were to be extended to outside the scientific realm, many types of relevant and reliable expert testimony – that derived substantially from practical experience – would be excluded.  Such a result truly would turn *Daubert*, a case intended to relax the admissibility requirements for expert scientific evidence, on its head."  *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997) (citation omitted).  The Sixth Circuit's insight was later vindicated by the Supreme Court's observations in *Kumho Tire* that "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case"; in some cases "the relevant reliability concerns may focus upon personal knowledge or experience."  *Kumho Tire Co.*, 526 U.S. at 141, 150.  Therefore, whether "*Daubert's* specific

11

factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

Here, Defendants' complaints regarding Expert Napier's testimony–his alleged "because I said so opinions," go to the weight to be given his testimony, not to the admissibility. The Court concludes that Napier's testimony is reliable and helpful. Therefore, the Court **DENIES** Defendants' Motion *in Limine* Regarding Expert Napier.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion *in Limine* Regarding Expert Derian (ECF No. 81), **DENIES** Defendants' Motion *in Limine* Regarding Expert Wistar (ECF No. 82), and **DENIES** Defendants' Motion *in Limine* Regarding Expert Napier (ECF No. 83). As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

<u>/s/ Gregory L. Frost</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**