UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HEATHER GRUENBAUM,

      Plaintiff,

                                Case No.  09-cv-1041

    v.                          JUDGE GREGORY L. FROST
                                  Magistrate Judge Norah McCann King

WERNER ENTERPRISES, INC., et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Heather Gruenbaum's Motion for Partial Summary Judgment on the Issues of Liability and Causation (ECF No. 43), Defendants' Response to Plaintiff's Motion for Partial Summary Judgment (ECF No. 88), the Reply in Support of Plaintiff Heather Gruenbaum's Motion for Partial Summary Judgment (ECF No. 118), Defendants' Motion for Summary Judgment (ECF No. 51), the Opposition of Plaintiff Heather Gruenbaum to Defendants' Motion for Summary Judgment (ECF No. 72), and Defendants' Reply in Support of their Motion for Summary Judgment (ECF No. 119).  For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.

### I.  Background

The following facts are uncontroverted.

Defendant Werner Enterprises, Inc. ("Werner") is a transportation and logistics company engaged primarily in hauling truckload shipments of general commodities in both interstate and intrastate commerce.  Defendant Jeremy Harpst was hired by Werner as a commercial truck

1

driver in November 2007.

On February 11, 2009, at approximately 3:45 a.m., Harpst picked up a load of goods from the Staples Distribution Center in London, Ohio.  He then traveled to the Staples Distribution Center in Romulus, Michigan, arriving at approximately 7:15 a.m. on February 11, 2009.  Once Harpst's truck was unloaded, he began his return trip to the Staples Distribution Center in London, Ohio.  At approximately 9:00 a.m. he stopped to rest at the Petro Truck Stop in North Baltimore, Ohio.  Harpst slept in the sleeper cab of the vehicle for several hours.  Before leaving the truck stop at 8:15 p.m., Harpst checked "Weatherbug" on his cellular telephone to ascertain the weather conditions for London, Ohio.  Weatherbug indicated that wind was in the forecast that evening.

After leaving the truck stop, Harpst was driving north on Route 42 when the wind blew over his empty tractor-trailer.  The trailer fell onto Plaintiff's husband's 2008 Chevrolet Silverado truck that was traveling south on Route 42.  The impact crushed the passenger compartment of the truck killing Plaintiff's husband ("Plaintiff's decedent") instantly.  Although Harpst does not recall seeing Plaintiff's decedent's Silverado prior to the collision, Harpst does not believe that Plaintiff's decedent did anything to cause the collision.

Plaintiff filed this wrongful death action against Werner and Harpst on November 17, 2009.

## II.  Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The

Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Discussion

**A.  Oral Argument**

In their motions for summary judgment, Plaintiff and Defendants request oral argument.

3

Pursuant to the Local Rules for the Southern District of Ohio, a court ma grant oral argument if "oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented."  S. D. Ohio Civ. R. 7.1(b)(2).  Whether to grant or deny oral argument is left to the sound discretion of the trial court.  *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, *5-6 (S.D. Ohio July 27, 2006).

Here, the Court does not deem oral argument essential to the fair resolution of this case. Accordingly, the Court **DENIES** the parties' requests for oral argument.

## B.  Cross Motions for Summary Judgment

Plaintiff alleges claims for relief against Harpst and Werner based upon Harpst's alleged negligence in causing the accident that killed Plaintiff's decedent.  Plaintiff also filed a claim against Werner for Werner's alleged negligence in training and supervising Harpst.  Plaintiff and Defendants request summary judgment on the liability and causation elements of these claims. Defendants also move for summary judgment on Plaintiff's punitive damages claim.

### 1.  Claims based upon Defendant Harpst's alleged negligence

Plaintiff claims that there are no issues of material fact that Harpst, while acting within the course and scope of his employment,[1] negligently caused the death of Plaintiff's decedent for which Harpst is directly liable and for which Werner is responsible through *respondeat superior*. Defendants, however, argue that these claims are barred by the "act of God" affirmative defense, and that even if they were not barred, Plaintiff cannot make a showing sufficient to establish the

---

[1]Defendants do not dispute that at the time of the accident that killed Plaintiff's decedent, Harpst was acting within the course and scope of his employment with Werner.

4

existence of elements that are essential to her case.

The parties rely on the law of Ohio, as that is the State where the accident occurred.  *See Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 342 (1984) ("a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit").  To sustain an action based upon negligence under Ohio law, a plaintiffs must show "(1) the existence of a duty owing to the plaintiffs; (2) a breach of that duty; and (3) proximate causation."  *Moncol v. Bd. of Ed.*, 55 Ohio St. 2d 72, 75 (Ohio 1978) (citations omitted).

### a.  Harpst's duty

The parties disagree as to the standard of care Harpst owed to Plaintiff's decedent.  Defendants argue that Harpst had a duty to exercise "reasonable care" to avoid causing injury and Plaintiff contends that Harpst had the duty to exercise "extreme caution" because of the hazardous conditions in which he was driving the night of the accident.

The parties agree that the United States Department of Transportation, through the Federal Motor Carrier Safety Regulations, has implemented Safety Regulations ("Safety Regulations") for drivers of commercial motor vehicles.  *See* 49 U.S.C. § 31144, the Motor Carrier Safety Act of 1984 (regulations found in Title 49 of the Code of Federal Regulations were promulgated pursuant to this statute).  Ohio has specifically adopted the Safety Regulations.  *See* Ohio Admin. Code § 4901:2-5-02(A); *B&T Express, Inc. v. Pub. Util. Comm.*, 145 Ohio App.3d 656, 662 (2001).  The Safety Regulations provide in part:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction.  Speed shall be reduced when such conditions exist.  If conditions become sufficiently dangerous, the operation of

the commercial motor vehicle shall be discontinued and shall not be resumed until
the commercial motor vehicle can be safely operated. . . .

49 C.F.R. § 392.14.

Plaintiff argues that this regulation "provides the minimum standard of care [and that] it
is in fact a heightened standard when compared with ordinary care."  (ECF No. 43 at 10.)
Plaintiff relies upon two cases, one from a state court in California and one from a state court in
Virginia, which both applied this regulation in the way in which Plaintiff asks this Court to apply
it.  *See Weaver v. Chavez*, 133 Cal. App. 4th 1350, 1356-57 (Cal. Ct. App. 2005) (concluding
that trial court erred in giving "reasonable person" instruction, rather than instructing on
"extreme caution"); *Kimberlin v. PM Transport, Inc.*, 563 S.E.2d 665, 668-69 (Va. 2002) (noting
that 49 C.F.R. § 392.14 creates an "expanded duty of care for the operation of commercial motor
vehicles").

Defendants do not disagree that the regulation sets forth a higher standard than Ohio law
provides.  Defendants, however, argue that this regulation is inapplicable here because the
weather conditions were not such that Harpst's visibility or his truck's traction was affected.
Specifically, Defendants contend that the "extreme caution" duties in the regulation were not
"triggered in this case because up until the very moment of impact, Mr. Harpst never
encountered any hazardous conditions that affected his visibility or his vehicle's traction."  (ECF
No. 88 at 2.)  Instead, relying on Ohio law, Defendants argue that the standard of care applicable
to Harpst on the night of the accident is "reasonable care."  *See e.g. Somogyi v. National
Engineering & Contracting Co.*, No. 68694, 1996 Ohio App. LEXIS 64, at *4 (Ohio App. Jan.
11, 1996) ("The truck driver has the duty to use reasonable care" to avoid causing injury to
another).

6

Defendants are correct regarding the standard of care in Ohio. *See id.*; *see also Mussivand v. David*, 45 Ohio St. 3d 314, 318 (Ohio 1989) ("The existence of a duty in a negligence action is a question of law for the court to determine."). That is, "the common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances." *Mussivand*, 45 Ohio St. 3d at 318 (citation omitted). "A person is to exercise that care necessary to avoid injury to others." *Id.* at 319 (citing 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19). Defendants and Plaintiff, however, are incorrect as to the impact of the Safety Regulations. In Ohio, a violation of an administrative rule is admissible evidence of negligence. *See Chambers v. St. Mary's Sch.*, 82 Ohio St. 3d 563, 568 (1998); *Lillie v. Meachem*, NO. 1-09-09, 2009 Ohio App. LEXIS 4171 at *14, 2009 Ohio 4934, ¶ 19 (Ohio Ct. App. Sept. 21, 2009) (regulatory standards that establish safety procedures are admissible evidence of negligence); *Earley v. United Airlines*, No. 2:05-cv-0835, 2006 U.S. Dist. LEXIS 70439, at *11 (S.D. Ohio September 28, 2006) ("the violation of a Federal Aviation Administration regulation, which is an administrative rule, is only evidence of negligence"); *see also Tavorn v. Anthony Ulderico Cerelli & Redford Bldg. Supply*, No. 268311, 2007 Mich. App. LEXIS 1860, at *10-11 (Mich. Ct. App. July 31, 2007) (in Michigan, violation of the hazardous conditions regulation, 49 C.F.R. § 392.14, is evidence of negligence); *Labbee v. Roadway Express*, 469 F.2d 169 (8th Cir. 1972) ("Missouri is one of those states where violation of a [regulation] of this kind [*i.e.*, Safety Regulations, 49 C.F.R. § 392.14] is evidence of negligence in a civil action."). Accordingly, the Court concludes that, while the Safety Regulations do not establish a heightened standard of care in Ohio, evidence of a violation of the Safety Regulations may be considered by the trier of fact

7

as evidence of negligence.

### b. Did Harspt breach his duty to Plaintiff's decedent?

The question of breach of duty is generally a question of fact.  As an Ohio appellate court

explained in detail:

> "The question whether a defendant is guilty of actionable negligence is ordinarily
> one of fact for the jury, it being left to them to determine under proper instructions
> from the court whether or not the defendant acted with reasonable care under the
> particular circumstances of the case." 57 American Jurisprudence 2d 425,
> Negligence, Section 75.
>
> However,
>
> "[W]here the facts are undisputed and are susceptible of only one inference, the
> question is one of law for the court and the court should withdraw the question from
> the jury. Whether only one inference may be drawn from the evidence necessarily
> must rest ultimately with the court." 57 American Jurisprudence 2d 489, Negligence,
> Section 137.
>
> "So, if different minds can reasonably arrive at no other conclusion than that of the
> non-existence of the defendant's negligence, or if all the material facts touching the
> alleged negligence are undisputed and admit of but one rational inference, the
> question becomes one of law merely, and the court should so charge the jury."  39
> Ohio Jurisprudence 2d 824, Negligence, Section 196.
>
> "It does lie within the province of the court, however, to determine whether different
> minds could reasonably arrive at different conclusions in raising such inference."
> 39 Ohio Jurisprudence 2d 827, Negligence, Section 196.

*Keister v. Park Centre Lanes*, 443 N.E.2d 532, 537 (Ohio Ct. App. 1981).

Here, the Court has little difficulty determining that whether Harpst breached his duty of

care is a determination for the jury.

Defendants present evidence from Harpst that he encountered no adverse weather until he

turned from Route 33 onto Route 42, at which time he noticed that "the winds had picked up."

(Harpst Dep. at 179-83, July 1, 2010.)  With regard to violation of the Safety Regulations,

Defendants posit that Harpst's testimony is clear that he did not encounter any hazardous conditions that adversely affected his visibility or traction until the moment of the accident. Defendants also present evidence related to the effect the weather conditions that night had, and windy conditions in general have, on trucks with empty tractor-trailers, *e.g.,* Defendants' expert opined that it would take a wind gust in excess of 70 miles an hour from the west-southwest direction to cause Harpst's Werner tractor-trailer to blow over.  Finally, Defendants offer evidence of Harpst's actions that support fulfillment of his duty to exercise reasonable care, such as checking the weather program "WeatherBug" before leaving New Baltimore the night of the accident.

Conversely, Plaintiff presents evidence that indicates that Harpst did encounter adverse weather conditions prior to the accident, including Harpst's own written report of the accident, made the night of the accident, in which he stated it had "been windy since [he] started so" he traveled at a reduced rate of speed and that "[i]t started to get really windy as [he] was coming into Plain City."   (Harpst Dep. Ex. 12, July 1, 2010.)  Plaintiff also presents evidence from their expert that an empty tractor-trailer can be blown over by winds of 40 miles per hour.  Finally, Plaintiff presents evidence that the National Weather Service had forecast high wind advisories and warnings for the area in which Harpst was driving and that those advisories had been forecast for 41 hours prior to the accident.

The weight and credibility to be given to Harpst's seemingly incongruent testimony and to the other witnesses' and expert witnesses' conflicting testimony related to the weather conditions the night in question and the behavior of tractor-trailers in windy weather conditions are not appropriate summary judgment determinations.  *See Bennett v. City of Eastpointe*, 410

9

F.3d 810, 817 (6th Cir. 2005) ("In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.")  Consequently, the Court concludes that whether Harpst failed to exercise reasonable care the night of the accident "presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.  Furthermore, it is for the jury to determine whether Harpst violated the Safety Regulations, which they may consider, together with all other evidence, in deciding whether Harpst was negligent.

### c.  Did Harpst's alleged breach proximately cause the accident?

Defendants argue that Plaintiff cannot establish the proximate cause element of her negligence claim because they are entitled to the act of God affirmative defense and/or because Plaintiff's decedent's was legally intoxicated.  Resolution of the question of whether a party's negligence proximately caused an accident is ordinarily a question of fact.  *See Keister*, 443 N.E.2d at 537; *see also Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 407 (6th Cir. 2004) (proximate cause is to be determined by the jury, "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome").

### i.  act of God defense

Defendants contend that the injuries sustained by Plaintiff's decedent were the result of an act of God and, therefore, not chargeable to the alleged negligence of Defendants.  Plaintiff, however, contends that the act of God affirmative defense is not applicable because the negligence of both Defendant Harpst and Defendant Werner directly and proximately caused the collision.

Ohio courts have long held that "if the act of God, such as an extraordinary flood, was so

10

overwhelming and destructive as to produce the injury, whether the defendant had been negligent or not, his negligence cannot be held to be the proximate cause of the injury." *Piqua v. Morris*, 98 Ohio St. 42, paragraph 3 of the syllabus (Ohio 1918).  The parties do not dispute that a windstorm could constitute an act of God.  For the windstorm to qualify legally as an act of God, and therefore to be available as an affirmative defense, the windstorm "could not have been reasonably anticipated, guarded against or resisted."  *Id.* at 48.

In the case *sub judice*, the parties disagree as to the meaning of the alleged negligence of Harpst and Werner as it relates to the act of God defense.  In this regard, the Ohio Supreme Court explained:

> The proximate cause of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened.  The fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence.

*Id.* at paragraph one of syllabus.  Plaintiff asserts that the act of God defense is inapplicable here because "the high winds the night of February 11, 2009, would not have been sufficient, on their own, to cause Mr. Gruenbaum's death."  (ECF No. 72 at 32-33.)  Instead, Plaintiff contends that the negligence of Harpst in failing to exercise ordinary caution while pulling an empty trailer in high winds and the negligence of Werner in failing to properly train its employees, including Harpst, as to the dangers posed by high winds, and by failing to ensure compliance with regulatory requirements, were the proximate cause of the accident.

This issue, however, like the other two elements of Plaintiff's negligence claim, "presents a sufficient disagreement to require submission to a jury."  *Anderson*, 477 U.S. at 251-52.  The Ohio Supreme Court case of *Bier v. City of New Philadelphia* is instructive.  11 Ohio St. 3d 134

11

(1984).  In that case, the plaintiffs were picnicking at a public park when a thunderstorm approached.  Trying to pack-up the picnic supplies before the storm struck, all the plaintiffs were either under the cover of a picnic shelter that had a metal roof or beside the edge of the shelter.  Lightning struck the shelter, resulting in the death of one individual and injury to several others.  The plaintiffs brought a lawsuit against the City of New Philadelphia and the New Philadelphia Park and Recreation Board, contending that the defendants were negligent in failing to install a lightning protection system.  The defendants moved for summary judgment, based upon the act of God defense.  The trial court granted the defendants' motion, and the court of appeals affirmed.  The Ohio Supreme Court, however, reversed, finding that reasonable minds could differ as to whether the plaintiffs' injuries were the result of an act of God, and therefore, not chargeable to the alleged negligence of the defendants.

Like in *Bier*, in this case it is Defendants' contention that the injuries sustained by Plaintiff's decedent were the result of an act of God and, therefore, not chargeable to the alleged negligence of Defendants.  The parties, however, have provided conflicting evidence not only as to whether Defendants were negligent, as discussed *supra*, but also as to whether that negligence, if found, is a concurrent cause of Plaintiff's decedent's injuries.  *Id.* at 136 ("Therefore, in the instant case, the defendants could be found liable if a trier of fact were to find that the negligence of the defendants, in not installing a lightning protection system on the metal-roofed picnic shelter, is a concurrent cause of the plaintiffs' injuries.").  Consequently, the Court finds that it is for the jury to determine the proximate cause of the accident and whether the act of God defense applies to prevent any found negligence on Defendants' part from legally constituting the proximate cause of Plaintiff's decedent's injuries.

12

**ii. Plaintiff's decedent's intoxication**

On the night of the accident, Plaintiff's decedent had dinner with a client at a Hooters restaurant in Columbus, Ohio, where the two drank at least two pitchers of beer.  Plaintiff's decedent left Hooters less than one hour before the accident that killed him.  Plaintiff's decedent had a blood-alcohol level of 0.122, which exceeds the 0.08 legal limit in Ohio.  Defendants argue that Plaintiff's decedent was intoxicated at the time of the accident that took his life, and therefore, his intoxication was an intervening and superseding cause that, at a minimum, creates a question of fact on the proximate causation issue.

Further, Defendants argue that because he was driving with a blood-alcohol level of 0.122, Plaintiff's decedent was negligent *per se*, which means that he was contributorily negligent in the accident that took his life.  *See Mitchell v. Ross*, 470 N.E.2d 245, 248 (Ohio App. 1984) (summary judgment granted in favor of defendant because "no reasonable person could find [plaintiff's] fault to be less than the alleged negligence of the [defendant]"); *Sabbaghzadeh v. Shelvey*, No. 98CA007244, 2000 WL 763322 at *3 (Ohio App. Jun. 14, 2000) ("summary judgment may be granted in cases involving issues of comparative negligence where a reasonable person could only conclude that the contributory negligence of the plaintiff was greater than the combined negligence of the defendant or defendants").  Defendants conclude that Plaintiff's negligence claims are barred as a matter of law because Plaintiff's decedent's contributory negligence exceeded any negligence that may be attributable to Defendants. Defendants arguments are not well taken.

A violation of the Ohio Revised Code § 4511.19 establishes strict criminal liability. Defendants argue that violation of the statute also constitutes negligence *per se.*  Whether

13

violation of § 4511.19 establishes negligence *per se* is unclear. *Compare Johnson v. Helmus*,
No. E-86-19, 1987 Ohio App. LEXIS 7287 (Ohio Ct. App. June 5, 1987) ("We are unaware of
any Ohio case which provides that violation of [Ohio Rev. Code § 4511.19] constitutes
negligence *per se*.") *with Erie Ins. Co. v. City of Columbus*, No. 79AP-815, 1980 WL 353446 at
*4 (Ohio App. Dist. May 8, 1980) ("operation of a motor vehicle while under the influence of
alcohol is negligence *per se*").

     This Court, however, need not determine whether operating a motor vehicle under the
influence of alcohol in violation of § 4511.19 is negligence *per se* or not because negligence *per
se* is not liability *per se*. Success on any claim of negligence requires a showing of causation.
*See Bishop v. Munson Transp.*, 109 Ohio App. 3d 573 (Ohio Ct. App. 1996) (even though there
is evidence that an injured motorist was highly intoxicated, another motorist whose attempted
lane change may have been the proximate cause of the accident is not entitled to a directed
verdict); *see also e.g., Helmus, supra* (assigning as error the trial court's refusal to charge the
jury that violation of § 4511.19 "constitute[s] negligence *per se* for which the defendant is liable
for any proximately caused damages").

     In evaluating causation in a case like this one, *Hoff v. Nicely,* No. 90WD084, 1991 Ohio
App. LEXIS 4353 (Ohio Ct. App. Sept. 20, 1991), is instructive. In *Hoff*, the plaintiff's decedent
was a passenger in a car being driven by the defendant. The plaintiff's decedent died when she
jumped out of the moving vehicle. Both the plaintiff's decedent and the defendant had
consumed alcohol before entering the car. The plaintiff argued that the defendant was strictly
liable as a result of his violation of § 4511.19, *i.e.*, the defendant should not have been driving at
all. The trial court rejected this contention, granting summary judgment to the defendant, which

14

was affirmed on appeal. The appellate court concluded that the sole proximate cause of death was decedent's removal of herself from the vehicle. *Id.* at \*9 ("Upon consideration of all the evidence that was before the trial court and the law, this court finds that, there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of appellant, reasonable minds can only conclude that decedent's act in jumping from the moving vehicle driven by appellee was not naturally or usually in sequence with or a foreseeable result of any wrongful act of appellee and that appellee is entitled to judgment as a matter of law.").

Unlike the defendant in *Hoff*, Defendants in the instant action have submitted no evidence indicating that Plaintiff's decedent contributed in any way to the collision that killed him. There is no evidence that Plaintiff's decedent was driving erratically or otherwise showed any signs of being intoxicated. Nor is there any evidence that, had Plaintiff's decedent not consumed alcohol, he could have avoided the collision that took his life. Accordingly, Plaintiff's decedent's intoxication does not operate to bar Plaintiff's negligence claims as a matter of law.

### d. Conclusion of claims of negligence based upon Harpst's alleged negligence

The Court concludes that Harpst owed Plaintiff's decedent a duty to exercise reasonable care, as articulated above. It is for the jury to decide whether Harpst breached that standard of care, including determining whether Harpst violated the Safety Regulations, which may be evidence of his negligence. If the jury determines that Harpst did in fact breach his duty of care to Plaintiff's decedent, the jury must then further decide whether that negligence was the proximate cause of Plaintiff's decedent's death, and whether the act of God defense applies to relieve Harpst of liability.

Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and

15

**DENIES** Defendants' Motion for Summary Judgment as they relate to Plaintiff's claims based upon Harpst's alleged negligence.

### 2. Claim based upon Defendant Werner's alleged negligence

Initially, the Court notes that Plaintiff's negligence claims against Werner are contingent upon a finding of negligence on the part of Harpst. An underlying requirement of any negligent training and supervision claim is that an employee is individually liable for a tort or guilty of a claimed wrong against the third person. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 517 (6th Cir. 1999) (citing *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (Ohio 1988)).

Plaintiff contends that Defendant Werner was negligent not only under a theory of *respondeat superior*, but also that it was negligent in its own right because of its breach of its duties set forth in the Safety Regulations governing the employment of commercial vehicle drivers. Specifically, Plaintiff argues that Werner negligently failed to properly train and supervise, (*i.e.*, supervise, inform, and/or warn) Defendant Harpst, which proximately caused the accident that took the life of Plaintiff's decedent. Werner does not dispute that it has a duty to properly train and supervise its drivers. Werner, however, contends that its actions were at all times reasonable and in compliance with the Safety Regulations. Further, Werner argues that, even if it had negligently trained or supervised Harpst, Plaintiff cannot demonstrate that this negligence proximately caused the accident that resulted in Plaintiff's decedent's death.

### a. Werner's duty

The Court agrees with the parties that Werner had a duty to train and supervise its commercial vehicle drivers. Werner has a duty under 49 C.F.R. § 392.1 to instruct its drivers to comply with the Safety Regulations and a duty under 49 C.F.R. § 390.11 to "require observance

16

of the driver regulations." Therefore, as Werner recognizes, Werner had a duty to instruct its drivers on the Safety Regulations, including the "hazardous conditions" regulation discussed *supra*. That regulation requires drivers to exercise extreme caution when hazardous conditions adversely affect the vehicle's visibility or traction. Thus, it was Werner's duty to instruct its drivers to comply with this regulation and to require its drivers to observe this regulation.

To the extent that Plaintiff argues that there is a duty over and above those specifically set forth in the Safety Regulations, that argument is not well taken. As Defendants correctly note, the government has specifically regulated companies that employ commercial vehicle drivers in its promulgation of the Federal Motor Carrier Regulations. The Court will not add to the duties set forth in those regulations.

### b. Did Werner breach its duty to train Harpst?

Plaintiff claims that Werner failed to provide adequate training to its drivers related to the hazards posed by high winds, particularly when pulling an empty trailer. Plaintiff contends that Harpst should have been instructed as to specific wind speeds that were sufficient to blow over an empty tractor-trailer. Conversely, Defendants argue that they had no duty to instruct Harpst regarding the specific minimum wind speed upon which to cease operations. The parties' focus of their arguments miss the mark.

That is, the question is not whether Werner had a duty to instruct its drivers regarding specific wind speeds at which operation of their semi tractor-trailers should be ceased. Instead, the question is whether Werner's actions in training its drivers, including its training with regard to the risks high winds posed, were sufficient to meet its duty to instruct its drivers to comply with the Safety Regulations and to require its drivers to observe those regulations.

17

As to that determination, Defendants argue that Werner's "training with respect to driving in adverse weather conditions mirrors [the hazardous conditions regulation, 49 C.F.R. §] 3912.14." (ECF No. 51 at 22.)  Defendants offer evidence showing that Harpst was trained through orientation, hands-on driver training program, and quarterly safety reviews where driving in adverse weather conditions was routinely discussed.  Plaintiff, however, argues that this training was insufficient to meet Werner's duty.  Specifically, Plaintiff contends that the training was insufficient for a driver to make informed decisions on how to drive an empty tractor-trailer in wind that constitutes hazardous conditions.  Plaintiff points out that Harpst was not trained on the wind speeds that would likely blow over an empty trailer.  The parties' experts also disagree as to the training necessary for an employer to meet its duty to properly train its drivers as set forth in the Safety Regulations.

The Court finds that there is sufficient disagreement as to whether the training Werner provided to Harpst satisfied Werner's duty as set forth in the Safety Regulations and, therefore, it is a decision left properly for the jury.

### c.  Did Werner breach its duty to supervise Harpst?

Plaintiff contends that on the evening of February 11, 2009, Werner failed to provide adequate supervision, information, and/or warning to Harpst regarding the danger he faced driving in the windstorm.  Particularly, Plaintiff argues, in light of well-documented weather forecasts distributed for 41 hours prior to the accident and the fact that at least one other Werner truck was blown over by the same windstorm.  Contrarily, Defendants posit that "[i]n light of the fact that the driver bears the sole responsibility for determining whether to slow or cease operations, Werner had no legal duty to monitor weather and demand that its drivers slow or

18

cease operations." (ECF No. 51 at 22-23.)

The Court finds that, even if it is true that the driver bears the responsibility under the Safety Regulations to slow or cease operations, a proposition with which Plaintiff does not disagree, that responsibility does not relieve Werner of its own duties under the Safety Regulations. As the Court stated above, Werner has a duty to instruct and supervise its drivers to comply with the Safety Regulations. The Safety Regulations do not impose a specific duty upon a commercial trucking company to monitor the weather like those imposed upon other industries. *See e.g.,* 14 C.F.R. § 91.103 (Aviation); 46 C.F.R. § 45.191(Boating); and, 49 C.F.R. § 228.17 (Railroad). Thus, the issue here is whether Werner's failure to inform Harpst of the hazardous conditions about which they were aware on the evening of February 11, 2009, breached Werner's duty to properly supervise Harpst.

As to that issue, it is uncontroverted that Werner knew that one of its semi tractor-trailers was blown over on the evening of February 11, 2009 in Indiana. Plaintiff presents evidence that the windstorm responsible for that blow over was the same storm that moved through central Ohio on February 11, 2009. Werner has the ability to pinpoint the exact location of each of its trucks and to engage in two-way communication with the drivers. However, Defendants argue that "Plaintiff provides nothing to show Werner was aware of the Indiana accident with sufficient time to alert Mr. Harpst regarding the high winds in Indiana." (ECF No. 119 at 27.)

The Court finds that, whether Werner's supervision duty was breached by not informing Harpst of the windstorm that blew over one of its tractor-trailers in Indiana is an issue for the jury. Reasonable minds can differ as to whether Werner's duty included informing and/or warning its drivers in a situation like this one and as to whether Werner, even if required to so

19

inform, had the ability to do so on the night in question.

### d. Did Werner's alleged breach proximately cause the accident?

Defendants argue that Plaintiff cannot demonstrate that any alleged failure to train or supervise Harpst proximately caused Plaintiff's decedent's death.  Defendants reason:

> This is because, prior to working for Werner, Mr. Harpst already knew how to handle a semi in adverse weather conditions.  In March 2007, Mr. Harpst graduated from Baker College, a technical college in Flint, Michigan, shortly before starting employment with Werner in December 2007.  At Baker, Mr. Harpst learned that, when operating a commercial motor vehicle in adverse weather conditions, he should adjust his speed accordingly, maintain proper following distance, and to find the nearest safe haven when unable to maintain control over the vehicle.  Even without Werner's training, Mr. Harpst already knew how to handle a semi in adverse weather conditions. With Werner's training and prior supervision, he was adequately equipped to drive safely.

(ECF No. 88 at 20.)

Plaintiff, however, argues that, by failing to properly train and superise its drivers, Werner set up a situation where its drivers could choose to drive in extremely hazardous conditions.  This failure, Plaintiff contends, was a direct and a proximate cause of the accident that killed Plaintiff's decedent.

The Court finds that the uncontroverted facts and inferences to be drawn from them do not make it so clear that all reasonable persons must agree on the proper outcome of the proximate cause issue.  *See Keister*, 443 N.E.2d at 537.  Therefore, this issue is for the jury, not this Court, to determine.

### e. Conclusion of Plaintiff's claim of negligence against Werner

The Court concludes that Werner owed Plaintiff's decedent a duty to instruct its drivers to comply with the Safety Regulations and to require its drivers to observe the Safety Regulations.  It is for the jury to decide whether Werner's actions in training its drivers,

including its training with regard to the risks high winds posed, were sufficient to meet its duty. If the jury determines that Werner breached its duty of care to Plaintiff's decedent, the jury must then further decide whether that negligence was the proximate cause of Plaintiff's decedent's death, and whether the act of God defense applies to relieve Werner of liability.

Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment on Plaintiff's claim against Werner for its alleged negligence.

### 3. Punitive damages

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because punitive damages are not available in wrongful death cases in Ohio. Plaintiff agrees and does not oppose Defendants' motion in this regard. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to Plaintiff's claim for punitive damages.

### IV.  Conclusion

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment (ECF No. 43) and **GRANTS** Defendants' Motion for Summary Judgment as it relates to Plaintiff's punitive damages claim and **DENIES** it in all other respects (ECF No. 51).

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE